IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMY SMITH, et al, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:18-cv-505-LY |
| | § | |
| CITY OF AUSTIN, et al. | § | |
| Defendants. | | |

## DEFENDANTS AUSTIN POLICE CHIEF BRIAN MANLEY AND FORMER AUSTIN POLICE CHIEF ART ACEVEDO'S MOTION TO DISMSS PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

TO THE HONORABLE LEE YEAKEL, UNITED STATES DISTRICT JUDGE:

Defendants Police Chief Brian Manley ("Manley") and Former Police Chief Art Acevedo ("Acevedo") file this Motion to Dismiss to Plaintiff's Original Class Action Complaint (Dkt #1) pursuant to Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. In support, Defendants respectfully show the Court the following:

## I.  Introduction

This lawsuit is brought by three individually named victims of sexual assault against the above individually name defendants, as well as other individuals and governmental entities, including the City of Austin. Plaintiffs allege Section 1983 claims against Defendants Manley and Acevedo due to alleged violations of their rights under the Fourth Amendment, the Fifth Amendment, and the Equal Protection Clause. Additionally, they advance claims under Section 1985 for allegedly conspiring to violate their civil rights. Finally, they allege state law negligence claims against the Defendants. Throughout their Complaint it is difficult to tell what claims are

alleged against which Defendants. For purposes of this Motion to Dismiss Defendants Manley and Acevedo assume all of the above claims are alleged against them.

Plaintiffs' Section 193 claims fail as the Plaintiffs are unable to show their constitutional rights have been violated and they are unable to show that the rights they allege were violated were clearly established law. Therefore, both Manley and Acevedo are entitled to qualified immunity on the Plaintiffs' Section 1983 claims. Additionally, Plaintiffs' Section 1985 and 1986 claims fail as Plaintiffs have not shown their constitutional violations have been violated and they have not pled who conspired with whom, or even if Manley and Acevedo are alleged to have conspired. Finally, the Plaintiffs' state law negligence claims against Manley and Acevedo fail because under the Texas Tort Claims Act ("TTCA"), Plaintiffs must elect remedies and either bring suit against the governmental entity or its employees. By filing state law tort claims against the City of Austin, Plaintiffs made an irrevocable choice that bars any claim against the City's employees, namely Manley and Acevedo. Therefore, as Plaintiffs have not pled any viable claims against Manley and Acevedo, Defendants request that Plaintiffs claims be dismissed.

## II. Argument and Authorities

### A. Rule 12(b)(6) Standard

A motion to dismiss a Section 1983 claim under Rule 12(b)(6) is proper when the plaintiff's well pleaded facts are accepted as true, yet are insufficient to state a claim entitling the plaintiff to relief. *Leatherman v. Tarrant Cty Narc. Intellig & Coord'n Unit*, 507 U.S. 163, 164 (1993). *Twombly* requires that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's lawsuit will not survive a motion to dismiss if the facts pled do not raise the right to relief "above the speculative level," even if the facts are viewed in the light most favorable to the plaintiff. *Id.* at 555. The court does not evaluate the plaintiff's likelihood of success; instead it determines

whether the Plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A complaint that "offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

### B.  Rule 12(b)(1) Standard

A party may challenge the subject-matter jurisdiction of the district court to hear a case pursuant to Federal Rule of Civil Procedure 12(b)(1).  A 12(b)(1) motion may be decided on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the court's resolution of disputed facts. *Freeman v. United States,* 556 F.3d 326, 334 (5th Cir. 2009).  The burden of establishing subject-matter jurisdiction in federal court is on the party seeking to invoke it.  *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).   A court must dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *See Home Builders Assn. of Mississippi, Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998).  When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits.  *Ramming,* 281 F.3d at 161.  The absence of a valid waiver of sovereign immunity for a clam implicates subject-matter jurisdiction. *See Tex. Dep't of Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

### C.  Plaintiffs' Complaint does not plead *respondeat superior* liability through Chief Manley or Former Chief Acevedo.

Though it is not specified in their Complaint [Dkt. #1], Manley and Acevedo assume they are being sued in their individual capacities in order to avoid the claims against them from being subsumed by the Plaintiffs' claims against the City of Austin. In a §1983 claim against supervisory officials in their individual capacities, a supervisor may only be held liable for the acts of his

subordinate if the supervisory official either affirmatively participates in the acts that cause the constitutional violation or the official implements the unconstitutional policies that caused the constitutional injury. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). This means that a supervisory official can be liable for acts of his subordinates for promulgating unconstitutional policy or for failing to train and supervise subordinates. *Id*. To hold a supervisory official liable for implementing an unconstitutional policy, the plaintiff must show that the official acted with deliberate indifference. *Id*. A supervisory official is deliberately indifferent for failing to adopt a policy if it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights. *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992). To hold a supervisory official liable in a failure to train or adequately supervise claim, the plaintiff must show "1) the supervisor either failed to supervisor or train the subordinate official, 2) a causal link exists between the failure to train or supervisor and the violation of the plaintiff's rights, and 3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)). To establish deliberate indifference, the supervisor must be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brenoettsy*, 158 F.3d at 912.

Plaintiffs' Complaint [Dkt. #1] does not allege or mention any direct contact with either individual defendant. Additionally, Plaintiffs do not allege any specific conduct on the part of either Manley or Acevedo that describes any actions beyond promulgating policies or failing to train. [Dkt. 1]. Therefore, Plaintiffs must be attempting to reach Manley and Acevedo as individual defendants by alleging they implemented unconstitutional policies or they failed to train or supervise subordinates. Plaintiff is unable to establish deliberate indifference, and does not plead

facts that support that either Defendant acted with deliberate indifference, yet even assuming for purposes of a Motion to Dismiss that the Plaintiffs can establish deliberate indifference, the Plaintiffs are unable to establish that Manley and Acevedo promulgated an unconstitutional policy or that an alleged lack of training violated the Plaintiffs' rights, as the Plaintiffs have not pled valid constitutional violations. This will be addressed in the section below that details qualified immunity.

> **i. To pierce the Defendants' qualified immunity, the Plaintiffs must plead a violation of a constitutional right and that the Defendants' conduct was objectively unreasonable under clearly established law.**

In response to a Section 1983 claim like the ones brought by Plaintiffs, governmental officials sued in their personal capacity can assert qualified immunity. *Goodman*, 571 F.3d at 395. Qualified immunity protects government officials from liability where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Carroll v. Ellington,* 800 F.3d 154, 169 (5th Cir. 2015). In one part of the analysis, the court must determine whether the facts, taken in the light most favorable to the party asserting the injury, show that the official violated a constitutional right. *Price v. Roark*, 256 F.3d 354, 369 (5th Cir. 2001). If there is no constitutional violation, the inquiry ends in favor of the official asserting qualified immunity. *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003). In the other part of the analysis, the court must determine whether the official's conduct was objectively reasonable in light of the clearly established law. *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on the other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009). In other words, courts look to whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Price*, 256 F.3d at 369. Courts are able to exercise discretion when deciding which of the two prongs of the qualified immunity analysis to answer first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Qualified immunity protects officials who merely make a mistake in judgment and it shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986).  Because qualified immunity is immunity from suit rather than a defense to liability, it is essentially lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity is immunity from suit and is intended to give government officials a right to avoid standing trial but also to avoid the burdens of pretrial matters such as discovery due to the likelihood that such matters can be disruptive to effective governance. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

> **ii.  Plaintiffs have not alleged sufficient facts to show that any of the individual defendants violated a constitutional right.**

Plaintiffs allege that Manley and Acevedo violated their Fourth Amendment right to be free from a warrantless search by the government, their Fifth Amendment right to be free from an unconstitutional takings of private property by the government without just compensation, and their right under the Equal Protection Clause to equal protection under the laws. [Dkt. 1, Section VI]. Plaintiffs have failed to sufficiently allege that Manley and Acevedo violated any of the above constitutional rights.

> **a)  Plaintiffs have not sufficiently alleged that their Fourth Amendment rights were violated by Manley or Acevedo, nor even that a Fourth Amendment violation occurred.**

The Fourth Amendment protects people from unreasonable searches and seizures by the government. The Amendment guarantees "the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 613-14 (1989). The initial inquiries, prior to determining if a search is reasonable, is to determine if the search is attributable to the government or its agents and to determine if the action amounted to a search. *Id*. at 614. Plaintiffs

allege their Fourth Amendment rights were violated when sexual assault forensic exams were performed on them after their assaults. [Dkt. 1, ¶185-99].

The Fourth Amendment does not protect against intrusions by private actors. *Id*. If a private party acted as an agent for the government, the Fourth Amendment can be implicated. *Id*. Here, the Plaintiffs have not pled a violation of the Fourth Amendment, as none of the Plaintiffs have pled facts that support their conclusory allegation that the medical personnel who performed sexual assault forensic exams on them were agents of the government. Plaintiffs are therefore unable to establish as a preliminary matter that the sexual assault forensic exams are searches that implicate the Fourth Amendment. The 5th Circuit uses a two part test to determine if a private party was acting as an agent of the government when conducting a search. *U.S. v. Paige*, 136 F.3d 1012, 1017-18 (5th Cir. 1998). To plausibly plead that a private party was acting as an agent of the government, the Plaintiff must plausibly plead 1) that the government knew of the intrusive conduct of the private party, and 2) that the private party intended to assist the government in conducting the search. *Id*. The Plaintiffs have not pled any facts to support either prong of the test. Plaintiff Smith has merely pled that she received a sexual assault forensic exam at a hospital. [Dkt. 1, ¶18]. She does not allege any facts that explain which hospital performed the exam, who performed the exam at the hospital, whether the police were present when the exam was conducted, or anything that would establish the Austin Police Department knew the exam was taking place and the actor intended to assist the government. [Dkt. 1, ¶18]. Similarly, Plaintiff Nitsch does not plead facts that explain at what hospital her exam took place or who performed it. [Dkt. 1, ¶37]. Finally, Plaintiff Conner has pled that her exam was conducted at SAFE, a shelter for sexual assault victims, and that her forensic exam was performed prior to her contacting the police, which directly contradicts what is required for the first prong of the test. [Dkt. 1, ¶47-48].

Even if the Plaintiffs have pled enough to establish state action to implicate the Fourth Amendment, they have not plausibly pleaded that the sexual assault forensic exam was constitutionally impermissible because the Plaintiffs allege that they consented to the search. A search conducted pursuant to valid consent is constitutionally permissible. *Schneckloth v. Bustamante*, 412 U.S. 218, 222 (1973). Consent to search must be voluntarily given, and the voluntariness is determined by examining the totality of the circumstances. *Id*. at 223. Consent must not be coerced by implied threat or covert force. *Id*. at 228. Here, Plaintiffs have tried to assert that the forensic exam "search" was impermissible because their consent was not voluntary. [Dkt. 1, ¶193-94]. They allege the consent was not voluntary because they were deceived into consenting to the forensic exam because they believed that the search was performed to apprehend their assailant and because they believed the physical evidence obtained would be tested. [Dkt. 1, ¶194]. Firstly, Plaintiffs have not pled any facts that support either conclusory contention---they do not detail or cite to any conversations that made any promises of that kind. Second, Plaintiffs' allegations that they were deceived require an endless series of assumptions. As Plaintiffs have not pled who performed their forensic exams, where they were performed, what was said before the exam was performed, or whether APD was present at the time, their allegation that they were deceived requires the assumption that the person performing the test was acting under the direction of APD and made promises regarding future outcomes reliant on a variety of persons, circumstances, and agencies. To reach Manley and Acevedo, the Plaintiffs' would also have to establish that this deception was the result of a policy established by Manley or Acevedo or that the deception resulted from a failure of Manley or Acevedo to properly supervise.

Finally, Plaintiffs' definition of what constitutes voluntary consent does not comport with the law. The Plaintiffs assert that consent can only be voluntary if future events and outcomes are

favorable to the Plaintiffs' result. [Dkt. 1, ¶194]. This is not the definition of voluntariness advanced by the Supreme Court. In *Schneckloth*, the court defined consent that was not voluntarily given as consent that was coerced by threats of force, or granted only in submission to a claim of lawful authority. *Schneckloth*, 412 U.S. at 233. Furthermore, in *Schneckloth*, the court held that consent does not require a knowing and intelligent waiver of the right not to consent to a search. *Id*. at 241. And finally, the Court stated that the protections of the Fourth Amendment "have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial." *Id*. at 242. Here, where Plaintiffs voluntarily sought medical care and voluntarily participated in the forensic exam—all plaintiffs admit they contacted medical staff or law enforcement on their own accord-- it cannot be said they plausibly pleaded a violation of their Fourth Amendment rights.

> **b) Plaintiffs have not plausibly pleaded that their Fifth Amendment rights were violated by Acevedo or Manley, or even that a Fifth Amendment violation occurred.**

The Takings Clause of the Fifth Amendment provides that private property shall not be taken for public use without just compensation. Plaintiffs allege that they suffered unconstitutional takings when DNA samples were taken from the Plaintiffs during their forensic exams to produce a Sexual Assault Kit ("SAK"). The Plaintiffs argument is that because they allege the SAKs were "not timely and appropriately submitted" for DNA testing, the "taking" of their DNA did not provide appreciable benefits to the public, therefore the "takings" were not for public use. [Dkt. 1, ¶202-05].

Generally, Takings Clause case fall into two categories: physical takings or regulatory takings. *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 522-23 (1992). The government effects a physical taking only where it requires the property owner to submit to the physical occupation of his land. *Id*. at 527. A regulatory taking occurs when a regulation deprives the owner of the

economically viable use of his land or it does not substantially advance legitimate state interests. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016 (1992). An inquiry into whether an acquisition of property is a physical taking is completely different than the inquiry into whether a government action is a regulatory taking. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322-24 (2002).

Here, Plaintiffs have not stated whether they are alleging these are regulatory takings or a physical takings, but it is assumed they are alleging these are physical takings. Physical takings involve the government's permanent intrusion onto land or direct appropriation of private property for its own use. *Tahoe-Sierra*, 535 U.S. at 324. It cannot be that collecting evidence of a crime and providing medical treatment to a crime victim is within the definition of a physical taking. Plaintiffs have not plausibly pleaded that a sample of her DNA cells and other DNA on her person is personal property. In fact, there is some state court precedent that you do not retain a property interest in cells that are removed during medical treatment. *Moore v. Regents of the University of California*, 51 Cal.3d 120, 135 (Cal. 1990). Whether or not it ultimately facilitated the investigation or was used as evidence in a criminal proceeding is not part of the analysis. Finally, the Plaintiffs consented to the "taking" of the DNA samples; they were not "required to submit" as is necessary for a physical takings claim. *Yee*, 503 U.S. at 522-23.

> **c) Plaintiffs have not plausibly pleaded that Manley or Acevedo violated their rights under the Equal Protection Clause, or even that there was a violation of the Equal Protection Clause.**

Plaintiffs allege that Defendants violated their rights under the Equal Protection Clause due to allegedly allocating resources unequally between divisions investigating certain types of crimes, prioritizing other types of investigations besides sexual assaults, and failing to train on how to specially investigate sexual assaults. [Dkt. 1, ¶152-84]. The Due Process Clause does not require

the state to protect its citizens from private violence. *Beltran v. City of El Paso*, 367 F.3d 299, 304 (5th Cir. 2004). While the state cannot choose to selectively deny protective services to certain groups without violating the Equal Protection Clause, the Equal Protection Clause cannot be used as a tool to circumvent the fact that there is no right to state protection from private actors. *Id*. Nevertheless, the gender based Equal Protection Clause claims relating to law enforcement policies and practices have been evaluated in the domestic violence/abuse case context. *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000) (overruled on other grounds by *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To sustain a gender based equal protection challenge against law enforcement in the domestic violence context, the plaintiff must show "1) the existence of a policy, practice or custom of law enforcement to provide less protection to victims of domestic assault than to victims of other assaults; 2) that discrimination against women was a motivating fact; and 3) that the plaintiff was injured by the policy, custom, or practice." *Shipp*, 234 F.3d at 914. Notably, neutral government policies that have an adverse impact on a protected class are only unconstitutional under the Equal Protection Clause if there is discriminatory intent or purpose. *Id*. at 913. State policies that "perpetuate antiquated and outdated gender stereotypes that are derogatory and condescending towards women do not form the basis for proper discriminatory purpose. *Id*. While statistical evidence of disproportionate impact is probative on the issue of gender-based motivation, it is not sufficient to sustain an Equal Protection claim without evidence of intent. *Id*. at 914. For example, in *Beltran*, the City classified family violence assault 911 calls at a lower priority level than injury to a child. *Beltran*, 367 F.3d at 305. The Court held that the plaintiff was unable to show the discrimination against women was the motivating factor of that policy—mere statistical evidence or the existence of a policy does not violate the Equal Protection Clause without evidence of intent. *Id*.

Here, the Plaintiffs have similarly alleged that Manley and Acevedo promulgated a policy, practice, or custom to provide less protection to sexual assault victims than victims of other crimes because they are women. But the Plaintiffs plead no facts that support that, even assuming such a policy or practice exists, the reason for the alleged policy is due to animus against women. Plaintiffs make conclusory statements that, based on the statistics of the gender of crime victims, these alleged policies of failing to investigate and allocate resources must be because the victims of sexual assault are women. [Dkt. 1, ¶60]. As stated in *Beltran* and *Shipp*, these conclusory statements and statistics are not enough to make an Equal Protection Claim.

### iii. The alleged constitutional violations claimed by Plaintiffs are not clearly established law. Therefore, Plaintiffs are unable to meet the second prong of the qualified immunity analysis.

In the unlikely event the court decides Plaintiffs have sufficiently pleaded that a constitutional violation occurred, or if the court decides to address the second prong of the qualified immunity analysis first, then Plaintiffs have failed to sufficiently allege that Chief Manley and Chief Acevedo's actions were not objectively unreasonable under clearly established law. Therefore, they are entitled to qualified immunity. "A government official's acts are not objectively unreasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights." *Ellington*, 800 F.3d at 169. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir.2000). This means that even law enforcement officials who "reasonably but mistakenly [commit a constitutional violation]" are entitled to immunity. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir.2001). Qualified

immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986). On a motion to dismiss, the defendant's conduct as alleged in the complaint is scrutinized for objective reasonableness. *McClendon*, 305 F.3d at 323.

Here, there is no clearly established law that would allow Acevedo and Manley to know that any of their alleged conduct violated the Plaintiffs' Fourth Amendment, Fifth Amendment, and Equal Protection rights. The constitutional claims that the Plaintiffs put forth, especially the Fourth Amendment illegal search claims and the Fifth Amendment takings claims, are very novel constitutional claims that have not been presented to any court in the form they are presented in the Plaintiffs' Complaint. Tellingly, the Defendants could find no case law where a court has been presented with a Fourth Amendment challenge stemming from a crime victim's consent to give physical evidence. Additionally, a survey of Takings Clause cases show the law has developed to address physical takings of real property and certain personal property (such as a raisin crop) and regulatory takings of real property, but Defendants could find no case that addressed a crime victim consenting to give the government evidence from a crime. See *Horne v. Dept. of Agriculture*, 135 S. Ct. 2419, 2426-27 (2015) (describing the history of the Takings Clause).

In terms of the Equal Protection Clause, there has been legal developments that allow plaintiffs to bring gender based Equal Protection claims against law enforcement in the context of domestic violence, but there has not been a ruling that has extended the test laid out in *Shipp* to the context of sexual assaults. Meanwhile, it is clearly established that the state does not have a duty to protect individuals from private violence. *McClendon*, 305 F.3d at 324. The test of whether something is clearly established law should not be applied at a high level of generality—for example there is obviously a clearly established right to due process of law under the Due Process Clause, but defining the law at such a general level does not help in determining whether the

official's conduct was objectively reasonable. *Id*. at 331. Therefore, in a qualified immunity analysis the description of the clearly established law must be particularized to the specific conduct at issue. *Id*. The specific right must be defined with sufficient clarity to allow a reasonable official to assess the lawfulness of his conduct. *Id*. The specific, particularized rights that Plaintiffs assert were violated have simply never been discussed or held to exist yet by courts. Whether or not the Plaintiffs' constitutional rights were violated (the analysis in the first prong of qualified immunity) still does not impose liability on Manley and Acevedo, because the law supporting those violations are cutting edge and not clearly established at the time the conduct took place. Therefore, Manley and Acevedo are entitled to qualified immunity.

### D.  Plaintiffs fail to state a claim under Section 1985.

Plaintiffs have failed to plausibly plead a conspiracy claim. Although Plaintiffs fail to allege what particular part of Section 1985 they sue under, treating their allegations as an attempt to state a claim under Section 1985(3), Plaintiffs must plausibly allege (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Additionally, Plaintiffs must also show that the "the conspiracy was motivated by class-based animus." *Id.* (citing *Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994), *cert. denied*, 512 U.S. 1207 (1994)); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993). Fifth Circuit precedent suggests that only allegations of race-based conspiracy meet this requirement.  *See Deubert v. Gulf Fed. Sav. Bank,* 820 F.2d 754 (5th Cir.1987); *Newberry v. E. Texas State Univ.,* 161 F.3d 276, 281 n. 2 (5th Cir.1998); *Bryan v. City of Madison, Miss.,* 213 F.3d 267, 276 (5th Cir.2000) ("In this circuit,

we require an allegation of a race-based conspiracy.").

Here, Plaintiffs have failed to plausibly allege a conspiracy involving two or more persons: Plaintiffs fail to allege who is allegedly conspiring with whom, and a municipality cannot conspire with its own employees. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (noting that a corporate entity and its employees constitute a "'single legal entity which is incapable of conspiring with itself'") (quoting *Hilliard*, 30 F.3d at 653); *see also Swilley v. City of Houston*, 457 Fed. App'x 400, 404 (5th Cir. 2012) (holding that Section 1985 claim against City of Houston and Houston Police Chief failed because the "City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves"). Moreover, Plaintiffs have failed to plausibly allege that the alleged conspiracy was "motivated by class-based animus." *Hilliard*, 30 F.3d at 653; *Bray*, 506 U.S. at 266–268 (holding that plaintiffs had no cause of action under Section 1985(3) against persons obstructing access to abortion clinics because "[w]hatever one thinks of abortion, it cannot be denied that there are common and respectable reasons for opposing it, other than a hatred of, or condescension toward (or indeed any view at all concerning), women as a class").

### E.  Plaintiffs' negligence claims against the individual defendants should be dismissed under the election of remedies provision of the Texas Tort Claims Act.

Plaintiffs' negligence claim against the individual City defendants should be dismissed under the election-of-remedies provision of the TTCA, which requires that plaintiffs choose to bring state-law tort claims against either the governmental entity or its employees but not both[1].  *See* Tex. Civ. Prac. & Rem. Code § 101.106(a) ("The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever

---

[1]  Defendants Manley and Acevedo incorporate by reference the City's arguments about immunity under the Texas Tort Claims Act in Defendant City of Austin's Motion to Dismiss.

bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter."); *id.* § 101.106(e) ("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."); *see also University of Tex. Health Science Center at Houston v. Rios,* 542 S.W.3d 530, 538–39 (Tex. 2017) (holding plaintiff made irrevocable election to pursue a vicarious-liability theory against health center which required statutory dismissal of defendant doctors). While Plaintiffs fail to allege with specificity which defendants they purport to sue for negligence, to the extent that they sue individual defendants for negligence, those individuals must be dismissed as defendants upon the City's motion under the election-of-remedies provision of the TTCA because they acted within the general scope of their employment. *See* Tex. Civ. Prac. & Rem. Code § 101.106(e). Here the Plaintiffs have not specified which specific defendants they are bringing their state-law tort claims against. Assuming the claims are brought against the City, any claims against Manley and Acevedo must be dismissed. If the negligence claims are brought against Manley and Acevedo in their individual capacities, the Defendants are entitled to official immunity, which they reserve the right to assert.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the City respectfully requests that its Motion to Dismiss be granted and that Plaintiffs' claims be dismissed.

RESPECTFULLY SUBMITTED,

ANNE L. MORGAN, CITY ATTORNEY
MEGHAN L. RILEY, LITIGATION DIVISION CHIEF

/s/    Sara Schaefer
SARA SCHAEFER
State Bar No. 24086598
City of Austin
P. O. Box 1088
Austin, Texas  78767-1088
sara.schaefer@austintexas.gov
Telephone (512) 974-1536
MEGHAN L. RILEY
Assistant City Attorney
State Bar No. 24049373
meghan.riley@austintexas.gov
Telephone (512) 974-2458
HANNAH M. VAHL
Assistant City Attorney
State Bar No. 24082377
hannah.vahl@austintexas.gov
Telephone (512) 974-2346
Facsimile (512) 974-1311

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

       This is to certify that I have served a copy of the foregoing on all parties or their attorneys of record, in compliance with the Federal Rules of Civil Procedure, this 12th day of July, 2018.

**Via e-Filing:**

Leslie W. Dippel
Leslie.Dippel@traviscountytx.gov
Anthony J. Nelson
Tony.Nelson@traviscountytx.gov
Patrick T. Pope
Assistant County Attorney
Patrick.Pope@traviscountytx.gov
P. O. Box 1748
Austin, Texas 7876

ATTORNEYS FOR DEFENDANTS
MARGARET MOORE, ROSEMARY LEHMBERG, SALLY HERNANDEZ,
and TRAVIS COUNTY, TEXAS

Jennifer R. Ecklund
Thompson & Knight, LLP
Jennifer.ecklund@tklaw.com
1722 Routh Street, Suite 1500
Dallas, TX  75201

Mackenzie S. Wallace
Thompson & Knight, LLP
Mackenzie.Wallace@tklaw.com
1722 Routh Street, Suite 1500
Dallas, TX  75201

Elizabeth Myers
Thompson & Knight, LLP
Elizabeth.Myers@tklaw.com
98 San Jacinto Blvd., Suite 1900
Austin, Texas  78701

**ATTORNEYS FOR PLAINTIFFS**

                /s/    Sara Schaefer
                SARA SCHAEFER