FILED

2020 FEB 10 PM 2: 12

CLERK
WESTERN ... COURT
TEXAS
BY_____

| | | |
|---|---|---|
| AMY SMITH, JULIE ANN NITSCH, MARINA CONNER, EMILY BORCHARDT, ANGELA FIELDING, ANISHA ITUAH (BY AND THROUGH HER LEGAL GUARDIAN ANGELA MCKAY), HEATHER SIN, AND SARAH JONES, EACH INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS, | § § § § § § § § § § § § § | |
| V. | § § | CAUSE NO. A:18-CV-00505-LY |
| CITY OF AUSTIN, TRAVIS COUNTY DISTRICT ATTORNEY MARGARET MOORE, FORMER TRAVIS COUNTY DISTRICT ATTORNEY ROSEMARY LEHMBERG, AUSTIN POLICE CHIEF BRIAN MANELY, FORMER AUSTIN POLICE CHIEF ART ACEVEDO, AND TRAVIS COUNTY, TEXAS, DEFENDANTS. | § § § § § § § § § § § | |

## <u>ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

Before the court is the above-styled and numbered putative class action, commenced by eight

Plaintiffs, each a female sexual-assault victim in Travis County or Austin, Texas. *See* Fed. R. Civ.

P. 23. Plaintiffs' overarching allegations are that the City and County Defendants[1] conspired and

acted separately to deny the class of approximately 6,000 women equal access to justice and equal

---

[1]  For convenience, the court refers to Defendants in two collective groups–"City Defendants," which includes the City of Austin, Austin Police Chief Brian Manely, and Former Austin Police Chief Art Acevedo; and "County Defendants," which includes Travis County, Texas, Travis County District Attorney Margaret Moore, and Former Travis County District Attorney Rosemary Lehmberg.

protection of the law.[2]  Plaintiffs allege the Austin Police Department's ("Department") investigations of sexual-assault offenses and the manner in which the Travis County District Attorney prosecutes those offenses violates Title 42 United States Code section 1983, the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, and the Texas Constitution's provision protecting crime-victims' rights.[3]  *See* 42 U.S.C. § 1983; 42 U.S.C. §§ 12101-12213 (ADA); 29 U.S.C. § 794 (Section 504); Tex. Const. art. I, § 30.

Plaintiffs assert that at the heart of this case is the "federal constitutional question:  Does it violate the Equal Protection Clause of the 14th Amendment to the U.S. Constitution for the City of

---

[2] Plaintiffs concede that their claims of intra-department conspiracy–claims that various City departments conspired with other City departments, and claims that various County departments conspired with other County departments–should be dismissed.  Plaintiffs, however, maintain their claim that the City and the County, together, conspired to harm Plaintiffs.  *See* 42 U.S.C. § 1985.

Plaintiffs propose that the class be divided into four subclasses:

(a) "Reported Assault Subclass," consisting of all adult women who were sexually assaulted in Travis County, Texas, reported their assault, and were adversely impacted by the City and County Defendants' policies, practices or customs;

(b) "Invasive Testing Subclass," consisting of all adult women who were sexually assaulted in Travis County, Texas, and underwent invasive testing in the preparation of a Sexual Assault Kit, and were adversely impacted by the City and County Defendants' policies, practices or customs;

(c) "Disabled Reported Assault Subclass," consisting of all adult women who were sexually assaulted in Travis County, Texas, who were legally disabled at the time of assault, reported the assault, and were adversely impacted by the City and County Defendants' policies, practices, or customs; and

(d) "Disabled Invasive Testing Subclass," consisting of all adult women who were sexually assaulted in Travis County, Texas, who were legally disabled at the time of assault, underwent invasive testing in the preparation of a Sexual Assault Kit, reported the assault, and were adversely impacted by the City and County Defendants' policies, practices, or customs.

[3] Plaintiffs, by their Omnibus Response, voluntarily dismissed without prejudice their ADA and Section 504 claims alleged against the County Defendants.

Austin and Travis County to systematically refuse to appropriately investigate and prosecute sex crimes against women based on biased assumptions about women?" Specifically, Plaintiffs allege that the Defendants have committed federal and state constitutional violations by implementing, promoting, or maintaining the following policies, practices, or customs:

a. Refusing to implement or ignore proper training and supervision of government employees handling sexual assault cases;

b. Allocating more resources to other violent crimes than to sexual assaults against female victims;

c. Failing to submit or timely test Sexual Assault Kits;

d. Prioritizing the submission or testing of DNA evidence from other violent crimes over Sexual Assault Kits;

e. Purposely or knowingly using or contracting with labs that do not have the capacity to timely and accurately test or analyze Sexual Assault Kits;

f. Purposely or knowingly using labs with known contamination and competency problems for the testing or analyzing of Sexual Assault Kits;

g. Ignoring or refusing to use Sexual Assault Kit results to prevent additional rapes and sexual assaults;

h. Knowingly omitting from communications with victims of sexual assault that it is unlikely their Sexual Assault Kits will be timely tested and that an investigation will not be completed in the absence of those results;

i. Failing to arrest and charge known perpetrators of sexual assault against female victims;

j. Disproportionately dismissing cases or refusing to investigate or proceed with sexual assault cases when the victim is female;

k. Traumatizing female victims of sexual assault in the course of their interactions with Defendants by, among other things, refusing to treat their testimony as adequate evidence regarding lack of consent;

l. Overemphasizing or focusing on unfounded professed concerns about lack of DNA or credibility, when such concerns are not applied to: (i) other violent crimes, like robbery, non-sexual assault, and homicide; or (ii) sexual assaults committed against male victims;

m. Intentionally or knowingly subjecting women to invasive collection of bodily tissues or DNA with actual or constructive knowledge that such evidence will not be used to apprehend or potentially prosecute their attackers;

n. Subjecting female victims and other women to future assaults by known perpetrators by failing to act on, investigate, or prosecute prior sexual assaults against women;

o. Disproportionately refusing to investigate, process, or prosecute in cases involving sexual assault against female victims without DNA evidence;

p. Treating sexual assault cases involving female victims with less urgency and importance than is afforded to other types of violent crimes;

q. Inadequately staffing the investigation, processing and prosecutions of sexual assault cases involving female victims; and

r. Treating female victims of sexual assaults with less respect and devote less attention to their cases than to cases involving male victims, as applied to both sexual assaults and other crimes.

Plaintiffs seek damages and injunctive relief, requesting the court to order the City and County Defendants to make specific changes in the current methods, policies, customs, and practices used when investigating women's criminal sexual-assault allegations. Plaintiffs ask the court to render injunctive relief that provides for certain training and supervision to employees handling sexual-assault cases, implement trauma-informed approaches to how sexual-assault cases are

managed, require that Sexual Assault Kits be analyzed within a certain period of time, provide sexual-assault survivors and others with certain information about Sexual Assault Kits, and sexual assaults, provide a certain level of staffing for sexual-assault cases, and generally treat sexual-assault survivors and their cases equally as other crimes and other crime victims. Plaintiffs also request appointment of a special master "to ensure the required changes are reviewed, approved, and implemented."

The County Defendants and the City Defendants challenge the court's subject-matter jurisdiction over all of Plaintiffs' claims and also contend the court should dismiss this action with prejudice, as none of Plaintiffs' allegations state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(1), (6). On December 17, 2018, the court held a hearing on the Defendants' motions to dismiss, Plaintiffs' response, and Defendants' replies.[4] All parties were represented by counsel and, following the hearing, the court took the matter under advisement. The court delayed further consideration of this case until the close of the 86th Regular Session of the Texas Legislature in order to have the benefit of any action by the Legislature on the issues presented here.

---

[4] Before the court are the City Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss filed September 7, 2018 (Clerk's Document No. 40) ("City's Motion"); Defendants Travis County, District Attorney Margaret Moore, and Former District Attorney Rosemary Lehmberg's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint filed September 11, 2018 (Clerk's Document No. 43) ("County's Motion"); Plaintiffs' Omnibus Response to Defendants' Motions to Dismiss filed October 22, 2018 (Clerk's Document No. 49); City Defendants' Reply Brief in Support of Dismissal of First Amended Class Action Complaint filed November 5, 2018 (Clerk's Document No. 53); and Defendants Travis County, District Attorney Margaret Moore, and Former District Attorney Rosemary Lehmberg's Reply to Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint filed November 5, 2018 (Clerk's Document No. 54).

***Related actions by Texas Legislature and Austin's City Council***

The Texas Legislature concluded its 86th Regular Session and adjourned *sine die* on May 27, 2019.[5] The 86th Legislature passed multiple bills designed to change and improve the manner in which sexual-assault offenses are investigated and prosecuted in Texas. The primary reform bill passed was the Lavinia Masters Act, an omnibus bill that, *inter alia*, imposes deadlines for Sexual Assault Kits to be submitted for testing and to be analyzed, requires law-enforcement agencies to report on pending Sexual Assault Kits that have not been submitted for testing, requires the agencies to submit all backlogged Sexual Assault Kits for testing by January 15, 2020, and requires all outstanding Sexual Assault Kits to be tested and compared in the relevant databases by 2022.[6] Additionally, the act provides for the following: (1) extends the criminal statute of limitations in situations were a Sexual Assault Kit was not subjected to forensic testing; (2) provides that a Sexual Assault Kit collected pursuant to an investigation or prosecution of a felony offense be preserved for 40 years or until the applicable statute of limitations ends, whichever is longer; (3) requires the Department of Public Safety, in cases where the sexual-assault victim has not reported the assault to a law-enforcement agency, to develop procedures for the transfer of the Sexual Assault Kit to a crime laboratory and the preservation of Sexual Assault Kits at the lab until the earlier of five years or when written consent is received; (4) requires entities, such as crime labs that receive evidence from sexual-assault victims who have not reported the assault to law enforcement, to provide written notification to victims, in a trauma-centered way, before destroying the evidence, requires those

---

[5] Sunday, June 16, 2019, was the last day the Governor of Texas could sign or veto bills passed during the regular legislative session. *See* Tex. Const. art. IV, § 14.

[6] H.B. 8, 86th Leg., R.S., Ch. 408, §§1-16, 2019 Tex. Sess. Law Serv. 764-773 (West) ("the Act").

entities to use standardized forms, allows for objections from the victim, and requires documentation; (5) regulates the timeline for law-enforcement agencies to take possession of Sexual Assault Kits from health-care facilities, by requiring evidence to be picked up within either seven or 14 days, depending on the distance from the health-care facility; (6) requires that in active criminal cases, as long as the resources are available, that a crime lab complete its analysis of a Sexual Assault Kit within 90 days of receiving it and requiring analysis of any evidence necessary to identify the offender or offenders; (7) updates the timeline for comparing DNA profiles contained in a Sexual Asault Kit to CODIS and state databases to no later than 30 days after the Sexual Assault Kit has been analyzed and quality assurances performed;[7] (8) allows the crime laboratory to complete the DNA profile comparison on the relevant databases, if the lab has law-enforcement permission, complies with the above timeline, and meets requirements to access that database; (9) directs the Department of Public Safety to apply for grant funds to aid in the analysis of Sexual Assault Kits; (10) requires law-enforcement agencies and crime laboratories to submit quarterly reports to the Department of Public Safety identifying the number of Sexual Assault Kits that have not been submitted, or tested, or have not been analyzed, and consider noncompliance when determining eligibility for grant funds; (11) creates a statewide telehealth center for sexual-assault forensic medical examination to expand access to SANEs for underserved populations, by guiding and

---

[7] "CODIS is the acronym for the Combined DNA Index System and is the generic term used to descibe the FBI's program of support for criminal justice DNA databases as well as the software to rune these databases." FBI CODIS and NDIS Fact Sheet, *Frequently Asked Questions on CODIS and NDIS*, (Nov. 18, 2019, 12:15 p.m.), fbi.gov/services/laboratory/biometric-analysis/codis/codis-and-ndis-fact-sheet.

training sexual-assault examiners;[8] (12) updates the standardized form given to sexual-assault survivors at the time of their forensic exam to include information that public agencies will pay for their exams; and (13) creates a standard form for sexual-assault survivors who have not reported an assault that provides information on timeliness for evidence destruction, contact information for law enforcement and a rape-crisis center, and assurance that a request to ultimately release evidence to law enforcement can be made at any time. *Id.*

Additional legislation creates a sexual-assault task force to analyze statewide policies and practices regarding the investigation and prosecution of sexual assaults. The task force is also charged with developing recommendations to improve how sexual-assault cases are handled statewide. *See* Acts of June 4, 2019, H.B. 1590, 86th Leg., R.S., §§ 1-7 2019 Tex. Sess. Law Serv. Ch. 411, 774-78 (West). This legislation provides for: (1) the creation of a task force made up of a diverse group of members who have relevant subject knowledge, including prosecutors, law enforcement, forensic nurses, non-profit members, and governor appointees; (2) assigning the task force to develop policy recommendations that address how to coordinate funding; how to better prevent, investigate, and prosecute sexual assaults; and how to facilitate communications among agencies; (3) charging the task force with collecting regional information about resources for survivors, making recommendations for protocols for the collection and preservation of evidence, designing requirements for chain of custody, identifying untested evidence, and certifying forensic

---

[8] A "SANE" is a Sexual Assault Nurse Examiner. "A SANE Training equips RNs to respond to the needs of patients requesting medical care because of sexual assault or abuse. It trains them on how to conduct a comprehensive sexual assault medical forensic examination. It also prepares them to testify in court about that medical exam." Ken Paxton, Attorney General of Texas, *Sexual Assault Nurse Examiner (SANE) Certification,* (November 19, 2019 11:10 a.m.), www.texasattorneygeneral.gov/crime-victims/information-crime-victim-advocates/sexual-assault-prevention-and-crisis-services-sapcs/sexual-assault-nurse-examiner-sane-certification.

nurses; (4) assigning the task force with providing resources to law enforcement, prosecutors, and judges about trauma-informed practices, best practices for the investigation and prosecution of sexual assault, appropriate interactions between law enforcement and survivors, and information on how to maximize effective and empathetic investigations and prosecutions; (5) creating a report that includes an analysis of the resources provided to sexual-assault survivors from multiple organizations, including non-profits and governmental entities, and recommending how to improve those resources and locate funding; and (6) requiring the Texas Commission on Law Enforcement to consult with the task force on minimum curriculum requirements for training law enforcement on the investigation of sexual assaults. *Id.*

Other legislation allows sexual-assault examiners to provide a sexual-assault examination and collect forensic evidence of a sexual assault to a ward or incapacitated person over the age of fourteen without a guardian's consent. *See* Acts of June 14, 2019, H.B. 4531, 86th R.S. §§ 1-7, 2019 Tex. Sess. Law Serv. Ch. 1329, 3893-96 (West).

The 86th Legislature also provided that mechanisms be created so that a health-care facility or health-care provider may be reimbursed for the provision of forensic medical examinations of sexual-assault survivors. *See* Acts of June 14, 2019, H.B. 616, 86th Leg., R.S., §§ 1-10, 2019 Tex. Sess. Law Serv. Ch 1037, 2987-2991 (West).

Further, Molly Jane's Law requires law-enforcement agencies, when investigating a sexual assault, to enter information about the suspect, including offense type and name, into the Violent Criminal Apprehension Program Database. H.B. 3106, 86th R.S. §§ 1-4, 2019 Tex. Sess. Law Serv. Ch.297, 501-02 (West).

Finally, funding for grants to local law enforcement to test Sexual Assault Kits and funding for the examination and investigation of reported sexual assaults was included in Texas's biennial budget. *See* Acts of June 15, 2019, H.B. 1, 86th Leg., R.S., 2019 Tex. Sess. Law Serv. Ch. 1353, 4050 (West). All of the new state laws became effective on or before September 1, 2019.

At about the same time the 86th Legislature convened, Austin's City Council, in January 2019, unanimously passed a resolution, *inter alia*, directing the City Manager to hire an outside, nationally-recognized group to conduct a comprehensive evaluation of how the City investigates sexual assaults.[9] That evaluation is to include: (1) a review of record-keeping practices in the Department's Sex Crimes Unit; (2) a review of treatment given to victims of sexual assaults in cases involving alcohol or drugs; (3) a review of consistent application of policies in what are referred to as "stranger" sexual assaults as compared to "non-stranger" sexual assaults; (4) a review of the accuracy of case-clearance decisions; (5) a review of staffing, resources, training, and budgets in relation to caseload numbers and other units in the Department; (6) documentation of policies for how the Department communicates with prosecutors; (7) recommendations regarding how the Department can improve its responses in sexual-assault cases, including changes to internal policies, changes to practices, new training to be implemented, changes to staffing, improvement of facilities or resources, establishing a collaborative community process to continue to improve processes, and integrating best practices. *Id.*

In light of the recent state legislation and the City's resolution, on June 12, 2019, the court requested that the parties provide supplemental briefing detailing their positions about the effects, if any, of the newly enacted state laws on this case. The City and County Defendants argue that, in

---

[9] Austin, Tex., Resolution No. 20190131-077 (Jan. 31, 2019).

light of the recent laws passed by the Texas Legislature and also the Austin City Council's resolution, to maintain the principles of federalism and comity the court should defer to Texas's legislative power and the City's municipal power and decline to exercise jurisdiction based on federal-abstention doctrines. With abstention raised by the City and County Defendants, the court requested a response from Plaintiffs, who responded on August 9, 2019.[10]

Having considered Plaintiffs' First Amended Class Complaint,[11] the Defendants' motions to dismiss, the Plaintiffs' omnibus response, the Defendants' replies, the parties' supplemental briefing, the case file, the applicable law, and the arguments of counsel, the court now renders the following order.

### Defendants' motions to dismiss

Defendants move to dismiss this action for lack of subject-matter jurisdiction and for failure to state claims for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). When considering a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, the court first considers any Rule 12(b)(1) jurisdictional issues before addressing an attack on the merits of the case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

---

[10] The parties' supplemental briefing includes, Plaintiffs' Supplemental Briefing Regarding the Effects of Recently Enacted State Laws filed July 19, 2019 (Clerk's Document No. 69), Defendants Travis County, District Attorney Margaret Moore, and Former District Attorney Rosemary Lehmberg's Supplemental Brief filed July 19, 2019 (Clerk's Document No. 70), City Defendants' Supplemental Briefing on Motion to Dismiss filed July 19, 2019 (Clerk's Document No. 71); and Plaintiffs' Supplemental Briefing Regarding Abstention filed August 9, 2019 (Clerk's Document No. 73).

[11] Plaintiffs' extensive pleading consists of 448 paragraphs and 93 footnotes and spans 110 pages. For convenience the court refers to Plaintiffs' First Amended Class Complaint, their last live pleading, as "the complaint."

Pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain "detailed factual allegation[s]," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In examining a Rule 12(b)(1) motion challenging the court's jurisdiction, courts may consider matters of fact which are in dispute. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (when determining jurisdiction, district court may hear conflicting written and oral evidence and decide for itself factual issues). The court construes the complaint broadly and liberally, although argumentative inferences favorable to the pleader will not be drawn. *Id.* The burden of establishing subject-matter jurisdiction is on the party seeking to invoke it. *Ramming*, 281 F.3d at 161.

If a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must articulate "the plaintiff's grounds for entitlement to relief–including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). Stated otherwise, in order to withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When ruling on a 12(b)(6) motion, the court considers "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted). Matters of which a court may take judicial notice include matters of public record. *See Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). The court does not resolve any disputed fact issues, but rather assumes all well-pleaded facts contained in the complaint are true. *Wolcott*, 635 F.3d at 763. The court will not, however, "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010). Similarly, legal conclusions drafted as factual conclusions will not be treated as true. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); *see also Iqbal*, 556 U.S. at 678. Although all well-pleaded facts are viewed in the light most favorable to the plaintiff, the court "will not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). "To avoid dismissal, a plaintiff must plead specific facts." *Dorsey*, 540 F.3d at 338.

Therefore, dismissal is proper only if the complaint: (1) does not include a cognizable legal theory, such that the court lacks jurisdiction, *Ramming*, 281 F.3d at 161; or (2) includes a cognizable legal theory, but fails to plead enough facts to state a claim to relief that is plausible on its face. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

*Plaintiffs' claims for relief and County Defendants' jurisdictional challenges and affirmative defenses*

Plaintiffs allege that the County Defendants have committed federal and state constitutional violations by implementing, promoting, or maintaining the policies, practices, or customs[12] that are redressable by money damages, injunctive, and equitable relief.

The County Defendants respond that Plaintiffs lack standing to bring the claims alleged against them because Plaintiffs have alleged no case or controversy against the County Defendants. *See Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016). The court must dismiss an action "when the court lacks the statutory or constitutional power to adjudicate the case." *See Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of establishing subject-matter jurisdiction is on the party seeking to invoke it. *Ramming*, 281 F.3d at 161.

To have Article III standing Plaintiffs, "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The standing doctrine limits the category of litigants empowered to maintain a federal lawsuit seeking redress for a legal wrong. *Id.* (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982)). "In this way '[t]he law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches' and confines the federal courts to a properly judicial

---

[12] *See supra* page 3-4 (Plaintiffs' complaints about County Defendants' policies, practices, or customs are identified as a. through r.).

role." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). "Where, as here, a case is at the pleading stage, the plaintiff[s] must 'clearly [] allege facts demonstrating each element.'" *Id.*

In reviewing Plaintiffs' complaint, filed after all Defendants moved to dismiss Plaintiffs' previous complaint, Plaintiffs, refer throughout generally to "Defendants," with only a few distinguishing references to specifically named County Defendants. Although the complaint is extraordinary in length, in alleging the County Defendants violated Plaintiffs' constitutional rights, the court finds that only Plaintiff Smith has specifically articulated injuries in fact that are fairly traceable to any particularly challenged action by an individual County Defendant.

Smith complains that after reporting that she had been sexually assaulted in 2008, later in 2013, Defendant Lehmberg's office indicted Smith's alleged assailant, Tyrone Robinson. However, in 2014, the charges against Robinson were dropped and all of the collected DNA in the case was sent for retesting. Through retesting, the DNA found on Smith was confirmed to belong to Robinson. Later in 2014, Lehmberg's office again filed charges against Robinson, however, prosecution of the case languished. While the 2014 case against Robinson was pending in Travis County, over the next few years Robinson committed two additional sexual assaults in Houston, Texas, after which he was arrested and charged in Harris County. In late 2017, Defendant Moore's office dismissed the Travis County charges against Robinson, and told Smith that Robinson would get justice in Harris County, and that Smith might be able to testify during the punishment phase of Robinson's Harris County trial.

To the extent Plaintiffs address any additional conduct by the County Defendants, Plaintiffs complain only about actions taken by the "District Attorney's Office;" specifically, actions and

decisions made by individual, unnamed assistant district attorneys assigned to the Plaintiffs' respective cases.

The court first addresses Smith's allegations against the only County Defendants referred to specifically in the complaint–Defendants Moore and Lehmberg. The County Defendants argue that prosecutorial immunity shields them from all of Plaintiffs' claims, because each claim arises from discretionary decisions made by the County Defendants as to which criminal offenses the County chose to prosecute. Plaintiffs respond that prosecutorial immunity does not reach as far as the County Defendants claim.

"[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767 (2005). Further "a benefit is not a protected entitlement if governmental officials may grant or deny it in their discretion." *Id.* at 756. Accordingly, County Defendants argue that they are entitled to prosecutorial immunity regarding the specific decisionmaking about how the District Attorney's Office proceeded with criminal charges against Smith's perpetrator, Robinson. *See Van de Kamp v. Goldstein*, 555 U.S. 335 (2009); *Quinn v. Roach*, 326 F. Appx. 280, 292 (5th Cir. 2009). Plaintiffs respond that the County Defendants are not entitled to prosecutorial immunity because the immunity is only available "for prosecutorial acts intimately tied to advocacy in the judicial process," and that the County Defendants' actions at issue do not fit within the limited scope of the immunity.

Contrary to Plaintiffs' contentions, prosecutorial immunity, which is an absolute immunity, extends beyond the courtroom, to a prosecutor's actions taken before commencing a criminal prosecution as well as to other actions taken outside the courtroom. *Van de Kamp*, 555 U.S. at 347-48; *see Quinn v. Roach*, 326 F. Appx. 280, 292 (5th Cir. 2009). If a prosecutor is acting as an

advocate for the state, then based on that function, the prosecutor is entitled to absolute immunity. *See Burns v. Reed*, 500 U.S. 478, 491 (1991).

Here, with regard to Smith's allegations regarding the County Defendants' actions related to the prosecution of Robinson, the court concludes as a matter of law, that the County Defendants are shielded by prosecutorial immunity. With regard to Smith's allegation that the County Defendants mishandled the case against Robinson, the court concludes that Plaintiffs fail to state a claim for which relief may be granted. The claim will be dismissed with prejudice. Fed. R. Civ. P. 12(b)(6).

The court also addresses separately Plaintiff Nitsch's factual allegations, and concludes that her allegations fail to demonstrate that she suffered an injury-in-fact that is fairly traceable to the challenged conduct of the County Defendants. Nitsch alleges that "she does not know whether any investigation was done at all, whether a suspect was identified, or whether the Former DA or DA's office was ever involved in the process." Similarly Plaintiffs Sin and Ituah do not allege any conduct or interaction with the County Defendants, an Assistant District Attorney, or the District Attorney's office relating to their claims. Absent any injury-in-fact traceable to the County Defendants, Plaintiffs Nitsch, Sin, and Ituah cannot establish standing to bring claims against the County Defendants.

Plaintiffs also complain that the overall policies, customs, and practices of the County Defendants guided the decisions of individual assistant district attorneys, which thereby provides the causal link to establish Plaintiffs' standing to assert claims against these Defendants. The court disagrees. These decisions all relate to how the County Defendants choose to prosecute criminal matters and they are entitled to prosecutorial immunity; Plaintiffs' claims based on this premise are

dismissed with prejudice for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6).

Plaintiffs Fourth and Fifth Amendment claims against the County Defendants pertain to the collection, custody, and use of the Sexual Assault Kits and DNA evidence obtained from Plaintiffs. Plaintiffs allege that the performance of the Sexual Assault Kit was a warrantless search because the intrusions were below the bodily surface. Further, Plaintiffs allege that the retention of the genetic material obtained during the Sexual Assault Kit constitutes an unreasonable search and seizure that violated their Fourth Amendment rights. Plaintiffs also contend that none of them consented to the warrantless Sexual Assault kit, and alternatively, any consent obtained by Defendants at the time of the searches was not voluntary because Defendants deceived Plaintiffs into providing consent. Similarly, Plaintiffs allege that Defendants retention of Plaintiffs' Sexual Assault Kits, is a taking of Plaintiffs' personal private property for which Defendants must provide just compensation under the Fifth Amendment. Although none of the Defendants executed any aspect of the Sexual Assault Kits, Plaintiffs argue that they have properly pleaded and established Fourth Amendment and Fifth Amendment liability because the Defendant District Attorneys work together with law enforcement or are members of the Interagency Sexual Assault Team.

"To establish injury in fact, a plaintiff must show that she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548. An allegation of an abstract injury is insufficient. It must be alleged that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged statute or official conduct. *Commonwealth of Mass. v. Mellon*, 262 U.S. 447, 488 (1923). Moreover, as to the putative class representatives, if none of the named

plaintiffs purporting to represent a class establishes the requisite of a case or controversy, none may seek relief on behalf of herself or any other member of the class. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Additionally, at least one named plaintiff must have standing to seek injunctive relief on each of the claims against each named defendant. *See James v. City of Dallas, Tex.*, 254 F.3d 551, 562-63 (5th Cir. 2001).

Lacking are any factual allegations establishing involvement of any of the County Defendants. Plaintiffs' pleading that the District Attorneys work together or are members of the Interagency Sexual Assault Team in no way rises to a sufficient level for a factual allegation of an injury in fact. Further, there are no allegations that the actions, if any, were engaged in pursuant to a policy, custom, or practice of the County or the District Attorney's Office under Defendant Lehmberg's or Moore's direction. Plaintiffs, therefore, have not shown that they have standing to bring Fourth Amendment claims against the County Defendants.

Plaintiffs contend that they have properly alleged Fifth Amendment claims based on the allegations that Defendant Moore's public comments about mold-contaminated Sexual Assault Kits stored by the Department's DNA lab, amount to an admission to a "public use" of the Sexual Assault Kits sufficient to establish Plaintiffs' Fifth Amendment claim. Lacking is any allegation that the Plaintiffs' Sexual Assault Kits are among the contaminated kits, or that Plaintiffs' kits were used for "informational purposes" sufficient to establish standing as to their claims alleged against the County Defendants. The court concludes that there is no injury-in-fact fairly traceable to the actions of any of the County Defendants upon which Article III standing may be based to allege violations of the Fourth and Fifth Amendments.

The court also concludes that Moore and Lehmberg are entitled to Eleventh Amendment Immunity from Plaintiffs' claims for monetary damages in their official capacities. When acting in their prosecutorial capacities, Moore and Lehmberg's actions are those of the State of Texas, not Travis County. *Quinn v. Roach*, 326 Fed. Appx. 280, 292-95 (5th Cir. 1990) (Texas district attorneys are state officials when instituting criminal proceedings to enforce state law). Therefore, Plaintiffs' allegations against them in their official capacities constitute, in reality, a suit against the state. Further, a state is not a "person" under Title 42 United States Code section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). Moore and Lehmberg are therefore entitled to Eleventh Amendment immunity in addition to absolute prosecutorial immunity from liability for claims based upon actions within the scope of their prosecutorial duties, and this court is without jurisdiction to consider Plaintiffs' official-capacity claims alleged against Moore and Lehmberg.

### *Texas Constitution does not create a private right of action for damages*

Plaintiffs seek monetary damages under the Texas Constitution, arguing that Defendants have failed to treat Plaintiffs with "fairness, respect, and dignity." Tex. Const. art. I, § 30. There is no implied private right of action for damages for violations of the Texas Constitution. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 507 (5th Cir. 2001); *see also City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (no implied private right of action for damages against governmental entities for violations of Texas Constitution); *City of Beaumont v. Boullion*, 896 S.W.2d 143, 147 (Tex. 1995) ("there is no implied private right of action for damages" when individual alleges violation under Texas Bill of Rights).

As there is no private cause of action for damages pursuant to Article I, section 30 of the Texas Constitution, these claims alleged against Defendants are dismissed.

***Plaintiffs fail to state a claim of conspiracy***

Plaintiffs allege that the County Defendants and the City Defendants conspired to "interfere with their constitutional rights." *See* 42 U.S.C. § 1985 ("Section 1985"). To state a claim of conspiracy Plaintiffs must show: (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; which (4) causes injury to a person of a deprivation of any right or privilege of a citizen of the United States. 42 U.S.C. § 1985(3); *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010). Other than recite the elements of a conspiracy claim, the court concludes that Plaintiffs have failed to alleged facts that a conspiracy existed at all, and there is no evidence that even if there were a conspiracy, the conspiracy was not for the purpose of depriving equal protection. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). These claims are dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6).

***Federal abstention***

Since the filing of this action, there have been significant changes to Texas law related to the policies, practices, and procedures associated with investigating and prosecuting sexual assaults. The passage of the new laws indicates a strong statewide interest in changing the current manner in which municipalities, law enforcement, and prosecutors address sexual assaults in Texas. With regard to Plaintiffs' remaining claims alleged against the City Defendants[13] and Plaintiffs' requests

---

[13] The manner in which Plaintiffs' complaint is drafted makes it difficult to discern which claim is alleged against which defendant. However, it appears that Plaintiffs' federal Equal Protection, Fourth Amendment, Fifth Amendment, and violations of the American with Disabilities Act claims alleged against all City Defendants have yet to be addressed in this order.

for injunctive relief against the County Defendants, the court finds it appropriate to consider the parties' post-hearing abstention arguments. *See supra* note 10.

The underlying principle of abstention is that courts should exercise discretion to "restrain their authority because of scrupulous regard for the rightful independence of the state governments and for the smooth working of the judiciary." *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941). Federal courts may decline to exercise jurisdiction in situations were an important countervailing interest would be served, such as regard for federal-state relations. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). A federal court, even if it has jurisdiction, may in its discretion, abstain in the name of public interest, "for it is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil*, 319 U.S. 315, 318 (1943). Federal courts should abstain when doing otherwise would jeopardize principles of

> 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Younger v. Harris*, 401 U.S. 37, 44 (1971). The court should be particularly reluctant to enjoin state and local executive officials for these same reasons: in "a system of federal courts representing the Nation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976).

Federal courts should abstain when asked for relief that would disrupt a state's efforts at policy reform on matters of paramount public concern. *Burford*, 319 U.S. at 315. "The general thrust of *Burford*-type abstention can be well captured by saying that abstention is ordered in order

to avoid needless conflict with the administration by a state of its own affairs." 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, *Federal Practice and Procedure* § 4244, 382 (3d ed. 2007).

The recently enacted Texas laws go to the heart of Plaintiffs' claims. In addition to money damages, Plaintiffs seek sweeping injunctive relief, asking the court to direct everything from how Sexual Assault Kits are processed and tested, to how the Austin Police Department staffs its sex-crimes unit, trains its officers, and how its officers communicate with survivors of sexual assaults.[14] Although no abstention doctrine provides a perfect fit, the court finds that this action raises issues of federalism and comity that are central to *Burford* abstention. *Burford* abstention is "premised on a belief that in particular areas of the law any intervention by the federal court would have an impermissibly disruptive effect on state policies." 17A Wright, Miller, Cooper & Amar, *Federal Practice and Procedure* § 4245 at 411-12; *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814-15 (1976). "The hands-off attitude that *Burford* reflects means that if the

---

[14] The complaint requests that the court issue a permanent injunction against Defendants ordering them to:

a.   Properly train and supervise government employees handling sexual-assault cases or evidence;
b.   Require and enforce trauma-informed approaches to investigation and processing of sexual-assault cases;
c.   Submit, test, and analyze all sexual-assault kits obtained, or sent to, law enforcement officers in a timely manner;
d.   Inform victims of sexual assault of the likelihood and timing of their sexual-assault kits being tested;
e.   Treat sexual-assault cases with the same urgency and importance afforded to other types of crimes;
f.   Provide adequate staffing for investigation and processing of sexual-assault cases;
g.   Treat female victims of sexual assault with the same respect and attention to their cases as male victims, both of sexual assaults and other crimes; and
h.   Accurately and publicly report data reflecting the number of sexual assaults reported, investigated, and processed to conclusion within the criminal justice system on a bi-annual basis.

federal court decides that this kind of abstention is indicated . . . the proper course, as in *Burford* itself and the cases that have followed it, is to dismiss the action rather than to retain jurisdiction." 17A Wright, Miller, Cooper & Amar, *Federal Practice and Procedure* § 4245, at 412; *Burford*, 319 U.S. at 334.

### *Burford* abstention

The *Burford* abstention doctrine, allows a federal court to abstain from exercising jurisdiction when relief sought would disrupt a state regulatory scheme, a state administrative process, or create needless conflict with state law. 319 U.S. at 318; *Quackenbush*, 517 U.S. at 725-26. A federal court may abstain when: (1) a case involves "difficult questions of state law bearing on policy problems of substantial public import, whose importance transcends the result in a particular case;" or (2) if "the exercise of federal jurisdiction over the question in the case would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc.*, 961 F.2d 529, 531 (5th Cir. 1992).

The application of the *Burford* abstention doctrine remains sufficiently imprecise, providing room for a difference of opinion about its application. 17A Wright, Miller, Cooper & Amar, *Federal Practice & Procedure* § 4244, 406-05 (3d ed. 2007). "*Burford* abstention is pure federalism. It is used sparingly, however, because rarely are the circumstances such that a state interest would be unduly impaired by a federal court deciding a case otherwise within its jurisdiction." *Id.* at 407 n. 26. The Fifth Circuit provides a five-factor test for courts determining if *Burford* abstention is appropriate: (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that arena; and (5) the presence of a special state forum for judicial review. *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314

(5th Cir. 1993). No one factor is dispositive; instead the court weighs any of the applicable five factors against the general duty to exercise jurisdiction.

### *Wilson factor one: Cause of action arising under state or federal law*

Plaintiffs bring a combination of state and federal claims, however, the bulk of their claims are federal constitutional claims. The court finds that this factor does not weigh in favor of abstention.

### *Wilson factor two: Inquiry into unsettled issues of state law or local facts*

*Burford* abstention turns on whether the Plaintiffs' claims may be "entangled in a skein of state law that must be untangled before the federal case can proceed." *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997) (quoting *McNeese v. Board of Ed. for Cmty. Unit Sch. Dist.*, 373 U.S. 668, 674 (1963)). Although a federal court may have jurisdiction over a case because the case deals with federal law, federal courts should exercise their power with proper regard for comity and the rightful independence of state governments in carrying out the state's domestic policy. *Sierra Club*, 112 F.3d at 795. If a state's laws, regulations, and administrative processes would be unduly influenced and disrupted by interference from a federal court, then *Burford* abstention is favored. *See New Orleans Pub. Servs., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989); *Alabama Pub. Serv. Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 343, 349 (1951). Additionally, courts have held that abstention is available even if the state laws and regulatory schemes that affect the case are still in the process of being established. *Sierra Club*, 112 F.3d at 796.

In the last Texas legislative session, the Legislature passed numerous and sweeping bills aimed at addressing the investigation and prosecution of sexual assaults in Texas. Collectively, the laws create a new model of regulation that touches on most aspects of a sexual-assault incident. The

Legislature created a state-wide task force charged with crafting recommendations to continue improving protocol and implementing best practices related to sexual assaults. These new laws work together to create "a comprehensive scheme governing a matter of vital state interest, and one where uniform application of rules is important." *Id.*

Were the court to review Plaintiffs' remaining claims, not only would the court be assessing the new laws as they might affect Plaintiffs' claims and any underlying criminal cases, but the court would need to analyze how the requested prospective relief could be granted without coming into conflict with the implementation of the new laws. The court concludes that this situation is at the center of *Burford* abstention. *Burford* abstention applies when there is a "needless federal conflict with the state policy." *Burford*, 319 U.S. at 327.

This factor weighs heavily in favor of abstention.

### *Wilson factor three: Importance of the state's interest involved*

Enforcing criminal laws through the "suppression of violent crime and the vindication of its victims" is a foundational aspect of state police power. *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power"). Texas has a strong interest in enforcing its criminal laws. *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984). Here, the new laws involve regulating the investigation and enforcement of sexual-assault offenses. The stake Texas has in enforcing its criminal laws is the epitome of its police power. The court concludes that this factor weighs heavily in favor of abstention.

### *Wilson factor four: State's need for a coherent policy*

*Burford* abstention is directed at protecting coherent and complex state processes from undue federal interference, although abstention is not required just because a complex process exists. *Aransas Project v. Shaw*, 775 F.3d 641, 651 (5th Cir. 2014). *Burford* abstention is proper when

federal interference would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *New Orleans Pub. Servs., Inc.*, 491 U.S. at 361. Here, the new laws addressing sexual assaults are written to create a consistent approach for how various actors and agencies should handle issues in the present sexual-assault cases. The court finds that the specificity in the new laws is indicative of the Legislature's intent to implement statewide reforms and provide standards for how each stage of a sexual-assault investigation is to proceed. Federal involvement in the present case will necessarily interfere with the Legislature's recent actions creating coherent state policies related to sexual assaults. Certainly, the relief Plaintiffs request reaches the same areas that the recent laws seek to address. This factor weighs in favor of abstention.

### *Wilson factor five: State forum available for judicial review*

The Plaintiffs here are able to bring all their claims in state court. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-78 (1981) (state courts are presumed to have concurrent jurisdiction to hear federal causes of action); *Haywood v. Drown*, 556 U.S. 729, 735 (2009) (Section 1983 claims maybe brought in state court). Additionally, as the City Defendants argue, the new laws provide an enforcement scheme under which failure to comply "may be used to determine eligibility for receiving grant funds from the department, the office of the governor, or another state agency." *See* Tex. Gov't Code § 420.046. Additionally, the newly established Sexual Assault Survivors' Task Force, is charged with providing recommendations for accomplishing policy goals, which could lead to the inclusion of additional enforcement provisions.

Even though Plaintiffs seek monetary damages in addition to injunctive relief and appointment of a special master, the court concludes that *Burford* abstention should apply regardless of whether the remedies requested are at law or in equity because, at its root, abstention is grounded

in principles of comity and federalism, not solely in principles of equity. *See Louisiana Power & Light Co. v. City of Thibodeaux*, 360 U.S. 25, 28 (1959) (In reviewing prior abstention cases, "cases have been cases in equity, but they did not apply a technical rule of equity procedure. They reflect a deeper policy derived from our federalism.").

### *Weighing the factors*

In weighing the *Wilson* factors–with no one factor being dispositive–against the court's general duty to exercise jurisdiction, the court concludes that the factors weigh in favor of *Burford* abstention. *Wilson*, 8 F.3d at 314. The many new state laws and City of Austin Resolution No. 20190131-077 address the central controversy in this action about which Plaintiffs complain. There is an extraordinary degree of overlap between the relief requested of the court and what the City's resolution and the changes to Texas law achieve. Intrusion by the court at this juncture would have an impermissibly disruptive effect on the recently enacted Texas laws related to sexual assaults, which the court finds to be a matter of substantial public concern. The court, exercising its discretion and based on the principles of *Burford*, abstains and declines to exercise jurisdiction over Plaintiffs' remaining claims alleged against the City and County Defendants. 319 U.S. at 334. All remaining claims will be dismissed without prejudice. *Id.*; *see also* 17A Wright, Miller, Cooper, & Amar, *Federal Practice and Procedure* § 4245, 412 (3d ed. 2007).

### *Conclusion*

In summary, the court dismisses with prejudice Smith's claims that the County Defendants mishandled the criminal case against Smith's alleged perpetrator, Tyrone Robinson, as Smith has failed to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Additionally absent an injury-in-fact traceable to the County Defendants' conduct, Plaintiffs Nitsch, Sin, and Ituah lack standing to bring their claims alleged against the County Defendants. *See* Fed. R. Civ. P.

12(b)(1). The Plaintiffs complain about the manner in which the County Defendants choose to prosecute criminal matters. As the County Defendants have prosecutorial immunity for these claims, Plaintiffs' claims are dismissed with prejudice for failure to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

Plaintiffs' Fourth Amendment claims–that the District Attorneys who work together with law enforcement or members of the Interagency Sexual Assault Team took inappropriate actions pursuant to a policy, custom, or practice of the County or District Attorney's Office under Defendants Lehmberg or Moore's direction–lack any factual basis. Plaintiffs have not established standing to proceed with their Fourth Amendment claims, and these claims will be dismissed. *See* Fed. R. Civ. P. 12(b)(1). Plaintiffs Fifth Amendment claims also fail because lacking are any factual allegations sufficient to establish an injury-in-fact traceable to any of the County Defendants. *Id.*

Moore and Lehmberg, in their official capacities, are entitled to Eleventh Amendment Immunity for Plaintiffs' claims alleged against them seeking monetary damages. *Id.* Plaintiffs claims alleged against Moore and Lehmberg in their individual capacities, are barred by prosecutorial immunity as all of the claims are based on actions within the scope of Moore and Lehmber's prosecutorial duties. Therefore, those claims will be dismissed for failure to state a claim. *Id.*

Plaintiffs' claims alleged pursuant to the Texas Constitution's Article I, section 30 are dismissed with prejudice for failure to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Plaintiffs' claims that the City Defendants and the County Defendants conspired to interfere with Plaintiffs' constitutional rights, are dismissed for failure to state a claim for which relief may be granted. *Id.*

The court exercising its discretion, abstains and declines to exercise jurisdiction over Plaintiffs' remaining claims. *See Burford*, 319 U.S. at 334. Those claims are dismissed without prejudice.

**IT IS ORDERED** that the City Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss filed September 7, 2018 (Clerk's Document No. 40) and the Defendants Travis County, District Attorney Margaret Moore, and Former District Attorney Rosemary Lehmberg's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint filed September 11, 2018 (Clerk's Document No. 43) are **GRANTED TO THE FOLLOWING EXTENT**:

**IT IS ORDERED** that Plaintiff Amy Smith's claims that the County Defendants mishandled the criminal action against Tyrone Robinson, the alleged assailant in Smith's sexual-assault case, are **DISMISSED WITH PREJUDICE** as Smith has failed to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER ORDERED** that absent an injury in fact, Plaintiffs Julie Nitsch, Heather Sin, and Anisha Ituah lack standing to bring their claims alleged against the County Defendants and their claims are **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION**. *See* Fed. R. Civ. P. 12(b)(1).

**IT IS FURTHER ORDERED** that because the County Defendants are entitled to prosecutorial immunity, Plaintiffs claims that the County Defendants acted improperly in the manner in which the chose to prosecute sexual assaults are **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED**. *See* Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER ORDERED** that because there are no factual bases for Plaintiffs' claims that the District Attorneys who work together with law enforcement or members of the Interagency

Sexual Assault Team took inappropriate actions pursuant to a policy, custom, or practice of the County or District Attorney's Office under Defendants Lehmberg or Moore's direction, Plaintiffs have not established standing to proceed with their Fourth Amendment claims, and these claims are **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION**. *See* Fed. R. Civ. P. 12(b)(1).

**IT IS FURTHER ORDERED** that because Plaintiffs have failed to allege any factual allegations sufficient to establish an injury in fact traceable to any of the County Defendants Plaintiffs Fifth Amendment claims are **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION**. *See* Fed. R. Civ. P. 12(b)(1).

**IT IS FURTHER ORDERED** that as Defendants Moore and Lehmberg, in their official capacities, are entitled to 11th Amendment Immunity for Plaintiffs' claims seeking monetary damages, those claims are **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**. *See* Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER ORDERED** that because Plaintiffs' claims alleged against Defendants Moore and Lehmberg in their individual capacities are based on actions taken by Moore and Lehmberg that are within the scope of their prosecutorial duties, these claims are **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**. Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER ORDERED** that Plaintiffs' claims alleged against Defendants pursuant to the Texas Constitution Article I, section 30 are **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**. *Id.*

**IT IS FURTHER ORDERED** that Plaintiffs' claims that the City Defendants and County Defendants conspired to interfere with Plaintiffs' constitutional rights, are **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**. *Id.*

**IT IS FURTHER ORDERED** that as Plaintiffs claims of intra-department conspiracy alleged against the City Defendants and County Defendants are **DISMISSED FOR FAILURE TO STATE A CLAIM**. *Id.*

**IT IS FURTHER ORDERED** that the court abstains and declines to exercise jurisdiction over Plaintiffs' remaining claims. *See Burford*, 319 U.S. at 334. The remaining claims are **DISMISSED WITHOUT PREJUDICE**.

In all other respects the City Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss filed September 7, 2018 (Clerk's Document No. 40) and the Defendants Travis County, District Attorney Margaret Moore, and Former District Attorney Rosemary Lehmberg's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint filed September 11, 2018 (Clerk's Document No. 43) are **DENIED**.

SIGNED this _____10th_____ day of February, 2020.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE